UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN CARTER, | ) | CIV. 12-4129-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MIKE WALSH, in his official and | ) | |
| individual capacities; | ) | ORDER GRANTING |
| DOUG BARTHEL, in his official and | ) | DEFENDANTS' MOTION FOR |
| individual capacities; | ) | SUMMARY JUDGMENT |
| MIKE MILSTEAD, in his official and | ) | |
| individual capacities; and | ) | |
| EDWARD CENTENO, in his official | ) | |
| and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Benjamin Carter, brought an action against defendants, Minnehaha County Detective Mike Walsh, Sioux Falls Police Department Chief Doug Barthel, Minnehaha County Sheriff Mike Milstead, and Sioux Falls Police Officer Edward Centeno, alleging § 1983 claims for excessive force and unlawful policy.[1] Defendants move for summary judgment on all of Carter's claims. For the following reasons, defendants' motion is granted.

---

[1] Carter's Third Amended Complaint (Docket 41) also indicates claims for denial of assistance of counsel and for failure to train, supervise, and discipline. Carter's brief in opposition to defendants' motion for summary judgment (Docket 56) makes no mention of these other two claims, despite defendants' moving for summary judgment on all claims. Thus, Carter waived the right to recover under such claims. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

## BACKGROUND

The facts, viewed in the light most favorable to Carter, the nonmoving party, are as follows:

Carter was arrested on July 22, 2010, for a felony hit and run accident, reckless driving, and failing to maintain financial responsibility. At the time, he was also a suspect in an ongoing homicide[2] and arson investigation. Carter was immediately taken to the Sioux Falls Law Enforcement Center so that he could be interrogated in relation to the homicide and arson investigation.

Detective Walsh performed the interrogation of Carter at the Law Enforcement Center with the occasional assistance of Officer Centeno.[3] During the interrogation, Carter consistently raised his voice and used profanity toward Detective Walsh. At one point, Carter yelled, "good thing you have me cuffed!" and noted that he was bigger than Detective Walsh and Officer Centeno. Docket 51-7, Disk 2 at 17:08:50. After Detective Walsh stepped out of the room on one occasion,[4] Carter activated the emergency alarm in the room. Docket 51-7, Disk 1 at 14:31:12. When Detective Walsh reentered, he warned Carter not to do that again. Docket 51-7, Disk 1 at 14:32:53. Detective Walsh also told Carter several times throughout the interrogation to remain

---

[2] The victim of the homicide was beaten to death.

[3] The interrogation was videotaped.

[4] Detective Walsh exited the interview room on several occasions during the interrogation, often when Carter became hostile.

seated and, at one point, told Carter not to "stand up on" him because he gets nervous when people do so. Docket 51-7, Disk 2 at 15:07:20. Detective Walsh and Officer Centeno later stated that they believed Carter was under the influence of drugs or alcohol.

    The interaction at the heart of Carter's suit took place midway through the interview. Docket 51-7, Disk 2 at 18:12:00. Carter was alone in the interview room, handcuffed, and agitated. He again activated the emergency alarm. Detective Walsh and Officer Centeno entered the room to find a seated Carter. Carter quickly began using profanity and yelling at the officers. He then stood up out of his chair. Detective Walsh approached Carter and placed his open palm on Carter's chest and told him to sit down. Carter did not sit. Next, Detective Walsh, using his open palm, pushed Carter toward the chair, and Carter resisted. Detective Walsh then placed his left hand on Carter's shoulder and his right hand on Carter's person.[5] Officer Centeno simultaneously placed one hand on Carter's hip/leg area and applied a pressure point technique. Detective Walsh then pushed his knuckles into Carter's throat. The entire interaction lasted roughly ten seconds, and the officers removed their hands from Carter shortly after he was seated. Carter made no complaints of injuries at that time or later when he was booked into the Minnehaha County Jail. There were no lesions, bruises, or other wounds.

---

    [5] Detective Walsh's body obstructs the view of the camera, and thus it is not clear where he placed his hand on Carter.

**LEGAL STANDARD**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

**DISCUSSION**

**I.    § 1983 Claim–Excessive Force**

Carter claims defendants Walsh and Centeno violated his rights by using excessive force when they were interrogating him after he had been arrested.

Defendants Walsh and Centeno argue Carter cannot win on the merits, and they also assert the defense of qualified immunity.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Eighth Circuit Court of Appeals has recognized three different scenarios in which an excessive force claim may arise, differentiating by looking at when in the criminal process the force was used. Where the excessive force claim arises during the "arrest," it invokes the protections of the Fourth Amendment. *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011); *see also Graham*, 490 U.S. at 394. Where the excessive force claim arises during "pretrial detention," protections of the Fourteenth Amendment are invoked. *Walton v. Dawson*, 752 F.3d 1109, 2014 WL 2053835, at *4 (8th Cir. 2014). And finally, excessive force claims arising after conviction invoke the Eighth Amendment. *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000); *see also Graham*, 490 U.S. at 398. Here, Carter's excessive force claim stems from force used while he was being interrogated at the Law Enforcement Center in Sioux Falls, South Dakota. At the time, Carter had been arrested but had not been booked or placed into jail. Under similar circumstances, the Eighth Circuit has applied Fourth Amendment standards when analyzing excessive force claims. *See Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) ("[W]e have applied Fourth Amendment excessive force standards to incidents occurring during the transportation, booking, and initial detention of recently arrested persons.");

*Wilson*, 209 F.3d at 716 (apply Fourth Amendment standards when force was applied at local jail shortly after the booking process); *Moore v. Novak*, 146 F.3d 531, 715 (8th Cir. 1998) (applying Fourth Amendment standards when force was applied during the booking process); *Mayard v. Hopwood*, 105 F.3d 1226, 1228 (8th Cir. 1997) (applying Fourth Amendment standards when force was applied in the back of a police car following the arrest); *Roberts v. Ross*, 5 F.3d 532 (8th Cir. 1993) (unpublished) (noting that plaintiff was an arrestee and not a pretrial detainee when he was in the booking room). Therefore, the court analyzes Carter's excessive force claim using the Fourth Amendment framework.[6]

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). Whether a use of force was objectively reasonable is determined "by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *McKenney*, 635 F.3d at 359

---

[6] If Carter "cannot win his case under Fourth Amendment standards, it is a certainty he cannot win it under the seemingly more burdensome, and clearly no less burdensome, standards that must be met to establish a Fourteenth Amendment substantive due process claim." *Wilson*, 209 F.3d at 716.

(internal quotations omitted). "The reasonableness of a use of force depends on the particular facts and circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012). "A court may also evaluate the extent of the suspect's injuries as well as standard police procedures." *Mann*, 497 F.3d at 826 (internal citation omitted). "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *McKenney*, 635 F.3d at 359.

Carter argues that defendants' use of force was unreasonable and thus excessive under the circumstances. Defendants contend that their use of force was reasonable. Because the interaction in question was videotaped by a camera in the interview room, few facts are in dispute, and those that are, the court assumes Carter's version of the facts.

Defendants' use of force was reasonable because Carter provoked defendants by failing to obey Detective Walsh's orders. Carter had been warned not to activate the emergency alarm and had been warned, repeatedly, not to stand up towards Detective Walsh because doing so makes him nervous. Carter deliberately disobeyed these instructions, which an officer may reasonably perceive as a sign of combativeness. Carter also had the chance to sit down on his own when Detective Walsh first placed his open palm on Carter's chest and told him to sit, but Carter refused. The officers

were thus justified in applying force following Carter's provocation so that they could neutralize any possible physical attack by Carter. *C.f., Carpenter*, 686 F.3d at 649 ("Law enforcement officers may use physical force to subdue an arrestee when he fails to comply with orders to lie still during handcuffing.").

 The circumstances the officers found themselves in also justify the use of force. Although Carter was arrested for nonviolent offenses, he was a suspect for a recent homicide in which the victim was beaten to death. Moreover, defendants believed Carter to be under the influence of either drugs or alcohol, which would make him unpredictable. Carter showed signs of aggression by deliberately disobeying Detective Walsh's orders to remain seated and by using profanity and yelling at the officers. In fact, Carter had previously said that it was a "good thing you have me cuffed" and noted that he was bigger than the officers. Docket 51-7, Disk 2 at 17:08:50. Thus, the circumstances justified the officers' use of force to ensure their safety by keeping Carter in a neutral, nonthreatening position.

 Also, the amount of force the officers used was reasonable. Using a single hand, Detective Walsh pushed down on Carter's shoulder, applied a pressure point technique, and dug his knuckles into Carter's throat. Officer Centeno applied a pressure point technique on Carter's hip/leg area using only one hand. The entire interaction lasted roughly ten seconds. The amount of force the officers used was consistent with the reason for applying the force—to get Carter to sit down in order to prevent any type of attack by Carter. Further, after the incident, Carter did not

8

complain of any injuries, and no injuries were visibly apparent. Thus, not only was it reasonable for defendants to apply force, the amount of force they applied was also reasonable.

Because the officers' use of force as well as the amount of force used was objectively reasonable under the circumstances, Carter has not established a constitutional violation under the Fourth Amendment's right to be free from excessive force. Therefore, defendants are entitled to summary judgment with respect to Carter's § 1983 excessive force claim.

## II.     § 1983 Claim–Unlawful Policy, Custom, or Habit

Carter also asserts § 1983 claims against Police Chief Barthel and Sheriff Milstead for their alleged failures to adopt adequate policies, procedures, and customs. These claims necessarily fail because Carter did not establish an underlying violation of his constitutional rights by a state actor, as discussed above. *Roe v. Humke*, 128 F.3d 1213, 1218 (8th Cir. 1997) (requiring an underlying violation of a plaintiff's constitutional rights in order to bring a claim for inadequate policies, customs, and training); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). Thus, summary judgment is granted in defendants' favor on this issue as well.

## CONCLUSION

Carter did not establish a violation of his constitutional rights because the force defendants used was objectively reasonable under the circumstances. And because no underlying violation occurred, Carter's claim for unlawful policy, custom, or habit necessarily fails. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 44) is granted.

Dated July 29, 2014.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                UNITED STATES DISTRICT JUDGE